# UNITED STATES DISTRICT COURT

for the

Eastern District of North Carolina

**FILED**

**AUG 15 2024**

PETER A. MOORE, JR., CLERK
US DISTRICT COURT, EDNC
BY _____ DEP CLK

In the Matter of the Seizure of )
*(Briefly describe the property to be seized)* )
2022 Kawasaki Jet Ski, Model JT1500KNFNN, )
Serial Number: US-KAW50528J122, with a 2014 Triton )
LT trailer, Serial Number: 4TCSM1110EHL42506 )

Case No. 5:24-MJ-2090-JG

## APPLICATION FOR A WARRANT
## TO SEIZE PROPERTY SUBJECT TO FORFEITURE

I, a federal law enforcement officer or attorney for the government, request a seizure warrant and state under penalty of perjury that I have reason to believe that the following property in the _____Eastern_____ District of _____Virginia_____ is subject to forfeiture to the United States of America under ___18___ U.S.C. § ___981___ *(describe the property:)*

2022 Kawasaki Jet Ski, Model JT1500KNFNN, Serial Number: US-KAW50528J122, with a 2014 Triton LT trailer, Serial Number: 4TCSM1110EHL42506

The application is based on these facts:

Please see the facts set forth in the attached affidavit.

☑ Continued on the attached sheet.

On this day, JULIA S. HANISH
appeared before me via reliable electronic means, was placed under oath, and attested to the contents of this Application for a Warrant to Seize Property Subject to Forfeiture.

_____
*Applicant's signature*

Julia S. Hanish, Special Agent, FBI
*Printed name and title*

Date: 15 AUGUST 2024

_____
*Judge's signature*

City and state: Raleigh, NC

James E. Gates, United States Magistrate Judge
*Printed name and title*

## AFFIDAVIT IN SUPPORT OF SEIZURE WARRANT

I, Special Agent Julia Hanish, having been duly sworn, state as follows:

## I.    BACKGROUND

1.    I am a Special Agent with the Federal Bureau of Investigation (FBI), and have been since April 4, 2004. I am currently assigned to the FBI's Charlotte Field Office, Raleigh Resident Agency, as a member of the Public Corruption and White Collar squad. My current duties involve investigating various violations of the laws of the United States, collecting evidence in cases which the United States is or may be a party in interest, and performing other duties as imposed by law. More specifically, I investigate fraud schemes, public corruption, securities fraud, and conspiracies to commit those crimes. I hold a Master's Degree in Business Administration and a Bachelor's of Science Degree in both Accounting and Finance. I am a Certified Public Accountant (CPA) with an active license in Nebraska. I have extensive experience conducting federal investigations involving complex financial crimes, theft of government property, wire fraud, and money laundering.

2.    Information contained in this affidavit is based upon my previous investigative experience, interviews, information and observations obtained during the course of this investigation and conveyed to me by other personnel of the FBI and the North Carolina State Bureau of Investigation.

3.    Because this affidavit is for the sole purpose of providing probable cause for seizure of the below-referenced property, I have not included every detail of every aspect of the investigation; rather, I have set forth facts that are necessary to establish probable cause to believe that the property is subject to forfeiture.

1

4.      On or about May 8, 2024, I submitted applications for seizure warrants for certain forfeitable property related to the criminal investigation of Katherine Southhall Bigelow ("BIGELOW). The warrant applications included an affidavit, attached hereto as **Exhibit A**, which described in detail the criminal activity and scheme perpetrated by BIGELOW, and detailed the probable cause to believe that the assets described therein were forfeitable. Exhibit A also described the manner in which BIGELOW funneled fraud proceeds through multiple bank accounts to fund her lifestyle.

5.      On May 9, 2024, Special Agents from the FBI and NCSBI confronted BIGELOW about the fraud and executed the seizure warrants obtained May 8, 2024, as listed in **Exhibit A**. BIGELOW confessed to the theft of approximately $1,399,589.48 from Vance County, North Carolina, and provided information related to her purchase of other assets. Following the interview of BIGELOW and seizure of assets, the FBI and NCSBI left BIGELOW's residence. BIGELOW killed herself thereafter.

6.      Relying upon the facts set forth in the original affidavit attached hereto as Exhibit A, and the additional factual information presented herein, I make this affidavit in support of a civil seizure warrant authorized under Title 18, United States Code, Section 981(b) to seize property that is subject to forfeiture pursuant to Title 18, United States Code, Section 981(a) with respect to the following assets:

(A) $6,557.47 furniture deposit held by Karobway Furniture & Floor Coverings (**Subject Asset A**)

(B) 2023 CAN-AM 8EPH, Vehicle Identification Number (VIN) 3JBUGAP44PK003114, (**Subject Asset B**)

(C) 2022 Kawasaki Jet Ski, Model JT1500KNFNN, Serial Number (SN) US-KAW50528J122, with a 2014 Triton LT trailer, Serial Number (SN) 4TCSM1110EHL42506, (**Subject Asset C**)

2

## II.    ASSETS TO BE SEIZED

**Subject Asset A, $6,557.47 furniture deposit held by Karobway Furniture.**

7.    Per review of purchase records, in November 2023, BIGELOW ordered furniture and mattresses, to be delivered at a later date, from Karobway Furniture & Flooring Coverings (hereinafter Karobway Furniture). On December 12, 2023, BIGELOW paid for the purchase with check number 1025, to Karobway Furniture for the purchase price of $6,557.47, from Beginning Broadnax Consulting Co. (BB Consulting), Benchmark Community Bank (BCB) account number 1400025014 (herein **Subject Account 2**). BIGELOW was the sole owner and signatory of the BB Consulting, **Subject Account 2**.

8.    The furniture was not delivered prior to BIGELOW's death in May 2024. The deposit of $6,557.47, hereinafter **Subject Asset A**, is maintained at Karobway Furniture pending legal action or resolution of BIGELOW's estate.

**Subject Asset B, 2023 Can-Am 8EPH.**

9.    Per review of purchase records, on January 26, 2024, BIGELOW purchased a 2023 CAN-AM 8EPH, Vehicle Identification Number (VIN) 3JBUGAP44PK003114, hereinafter **Subject Asset B**, using illicit funds. BIGELOW made the purchase with check number 1029, to Brewer's Cycles for the purchase price of $17,500, from **Subject Account 2**.

10.    As described in Exhibit A, ¶ 37-44, BB Consulting **Subject Account 2** was funded with deposits totaling $700,312.89[1] of illicit funds stolen from Vance County and laundered

---

[1] Exhibit A, paragraph 43, previously asserted that $662,312.89 or 95% of the $700,312.89 coming into Subject Account 2 was illicit funds, with further investigation needed into the remaining 5% coming from The Country Stor-House, an associated business to CLR. Interviews conducted of BIGELOW and members of CLR in May 2024, showed those payments were also directly traceable to illicit funds. The payments were payments on a loan BIGELOW made to CLR using the illicit funds stolen from Vance County.

through Country Living Rentals (CLR) Accounts at First Horizon Bank (FHB). Using the FIFO method, the entire amount of $6,557.47 of illicit funds was traced from **Subject Account 2** to the furniture purchase deposit of $6,557.47, **Subject Asset A**. Using the FIFO method, the entire amount of $17,500.00 of illicit funds was traced from **Subject Account 2** into the purchase of a 2023 CAN-AM 8EPH, Vehicle Identification Number (VIN) 3JBUGAP44PK003114, **Subject Asset B**. The flow of proceeds to make these purchases is illustrated below:



11.     Based on the foregoing, there is probable cause to believe that **Subject Asset A** and **Subject Asset B**, represent the proceeds of wire fraud, theft of programs receiving Federal Funds and/or involved in money laundering, and may be seized as property forfeitable to the United States.

**Subject Asset C, 2022 Kawasaki, Model JT1500KNFNN, and 2024 Triton LT trailer.**

12.     Per review of purchase records, on January 11, 2022, BIGELOW purchased a 2022 Kawasaki Jet Ski, Model JT1500KNFNN, Serial Number (SN) US-KAW50528J122, with a 2014 Triton LT trailer, Serial Number (SN) 4TCSM1110EHL42506, hereinafter **Subject Asset C**, using

4

illicit funds. BIGELOW made the purchase with check number 1063, to Brewer's Cycles for the purchase price of $15,698.96, from Jeremy W. Bigelow, DBA JB Farms, BCB account number 1400011840 (herein **JB Farms Account #1840**). Although not the owner, BIGELOW had signatory authority on JB Farms Account #1840, until she was removed on January 27, 2023. The check and the Buyer's Order were signed by BIGELOW.

13.     As described in Exhibit A, ¶ 37-40, JB Farms Account #5810 received illicit funds totaling approximately $277,878.43 from CLR FHB #2 Account #6059, referred to as **Subject Account 1**. These transfers amounted to 71 percent of the total deposits during the life of the **JB Farms Account #5810**. One of those deposits from **Subject Account 1** was a $79,884.16 deposit into **JB Farms Account #5810** via check number 4388 written to BIGELOW on or around December 21, 2021. On January 11, 2022, $16,000 was transferred from JB Farms Account #5810 to JB Farms Account #1840. The same day, **JB Farms Account #1840** check number 1063 was written to Brewers Cycles for $15,698.96. The check was used to purchase **Subject Asset C** and was signed by BIGELOW. The transfer to **JB Farms Account #1840** and the check used to purchase **Subject Asset C**_, The flow of proceeds to make the purchase is illustrated below:

*[handwritten margin note: Revision at Affiants direction.]*

*[handwritten insertion: CAME FROM ILLICT FUNDS.]*



14. Based on the foregoing, there is probable cause to believe that **Subject Asset C** represents the proceeds of wire fraud, theft of programs receiving Federal Funds and /or involved in money laundering and may be seized as property forfeitable to the United States.

### III.   CONCLUSION & REQUEST FOR SEALING

15. The facts and circumstances presented in this affidavit, and Exhibit A, establish probable cause to believe Katherine BIGELOW violated one or more of the following statutes: (a) Wire Fraud in violation of 18 U.S.C. § 1343; (b) Theft concerning programs receiving Federal Funds in violation of 18 U.S.C. § 666; and (b) Money Laundering in violation of 18 U.S.C. § 1956 and § 1957.

16. Based on the information summarized in this Affidavit, there is probable cause to believe that the Subject Funds are traceable proceeds of the foregoing offenses and/or were involved in the foregoing money laundering offenses and are therefore forfeitable to the United States pursuant to 18 U.S.C. § 981(a)(1)(A) and (C). With respect to the money-laundering offense specifically, the above-described transactions were repeatedly in excess of $10,000 and consisted of the proceeds of specified unlawful activity, and the repeated movement of funds through multiple bank accounts and BIGELOW's creation of a new company and account in the company's name, reflects that the transactions were designed to conceal or disguise the nature, location, source, ownership, or control of the proceeds of specified unlawful activity. Accordingly, I respectfully request that this Court authorize the Federal Bureau of Investigation to seize the above-referenced property.

6

Further your affiant sayeth naught.

Julia Hanish
Special Agent
FEDERAL BUREAU OF INVESTIGATION

On this **15** day of August 2024, Special Agent Julia Hanish appeared before me via reliable electronic means, was placed under oath, and attested to the contents of this Affidavit.

JAMES E. GATES
UNITED STATES MAGISTRATE JUDGE

7

## AFFIDAVIT IN SUPPORT OF SEIZURE WARRANT

I, Special Agent Julia Hanish, having been duly sworn, state as follows:

### Introduction

1.     This affidavit is made in support of an application for a seizure warrant to seize proceeds of a fraud scheme executed by the subject of an ongoing criminal investigation, Katherine Southall Bigelow (BIGELOW). As described in this affidavit, there is probable cause to believe that BIGELOW, acting as the Vance County Finance Director, stole approximately $1,399,589.48 from Vance County from June 2021 through December 2023. In addition, there is probable cause to believe that BIGELOW and others laundered the funds through multiple bank accounts to avoid detection or disguise the source of the funds. Investigators have traced up to $1,399,589.48 in stolen funds through accounts at First Horizon Bank, and further traced up to $940,191.32 in fraud proceeds to accounts at Benchmark Community Bank and other assets purchased with funds from these account, which are the subject of this warrant application.

### Background and Experience of Affiant

2.    I am a Special Agent with the Federal Bureau of Investigation (FBI), and have been since April 4, 2004. I am currently assigned to the FBI's Charlotte Field Office, Raleigh Resident Agency, as a member of the Public Corruption and White Collar squad. My current duties involve investigating various violations of the laws of the United States, collecting evidence in cases which the United States is or may be a party in interest, and performing other duties as imposed by law. More specifically, I investigate fraud schemes, public corruption, securities fraud, and conspiracies to commit those crimes. I hold a Master's Degree in Business Administration and a Bachelor's of Science Degree in both Accounting and Finance. I am a Certified Public Accountant (CPA) with an active license in Nebraska. I have extensive experience conducting federal investigations

GOVERNMENT
EXHIBIT
A

involving complex financial crimes, theft of government property, wire fraud, and money laundering.

3.    Information contained in this affidavit is based upon my previous investigative experience, interviews, information and observations obtained during the course of this investigation and conveyed to me by other personnel of the FBI and the North Carolina State Bureau of Investigation.

4.    Because this affidavit is for the sole purpose of providing probable cause for seizure of the below-referenced property, I have not included every detail of every aspect of the investigation; rather, I have set forth facts that are necessary to establish probable cause to believe that the property is subject to forfeiture.

### Purpose of the Affidavit

5.    I submit this affidavit in support of criminal and civil seizure warrants authorized under 21 U.S.C. § 853(f) (criminal seizure warrant), and 18 U.S.C. § 981(b) (civil seizure warrant), to seize property pursuant to 18 U.S.C. § 982 (Criminal Forfeiture), and 18 U.S.C. § 981 (Civil and Criminal Forfeiture).

6.    Specifically, this affidavit is made in support of an application to seize the following (collectively, the "Subject Funds" or "Subject Assets"):

(1) Contents of First Horizon Bank account number 175566059 in the name of Country Living Rentals, LLC (Subject Account 1), in an amount not to exceed $359,066.00

(2) Contents of Benchmark Community Bank account number 1400025014 in the name of Beginning Broadnax Consulting (Subject Account 2), in an amount not to exceed $474,572.97

(3) Contents of Benchmark Community Bank account number 1490000535 in the name of Katherine S. Bigelow. (Subject Account 3), in an amount not to exceed $25,000.00

(4) Contents of Benchmark Community Bank account number 1400023472 in the name of Katherine S. Bigelow (Subject Account 4), in an amount not to exceed $48,000.00

2

(5) 2024 Jeep Wrangler, Vehicle Identification Number (VIN) 1C4RJXFG6RW15134, registered to Katherine Bigelow (Subject Asset 5)

(6) 2024 Honda Pilot MP-AWD Elite, Vehicle Identification Number (VIN) 5FNYG1H88RB035088, registered to Katherine Bigelow (Subject Asset 6)

(7) 2023 Starcraft SLS-3QDH Pontoon, vessel registration number VA9183CK, hull number STR83169A323, Serial Number STR83169A323, with a 2024 Loadrite dual axle trailer, Vehicle Identification Number (VIN) 5A4DBFV20R2018625, registered to Katherine Bigelow (Subject Asset 7)

7. There is probable cause to believe that the Subject Funds are traceable to certain federal offenses described in more detail below, including, but not limited to, the following:

a. Wire Fraud, in violation of 18 U.S.C. § 1343;

b. Theft Concerning Programs receiving Federal Funds, in violation of 18 U.S.C. § 666;

c. Money Laundering and Conspiracy to Commit Money Laundering, in violation of 18 U.S.C. §§ 1956 and 1957.

### Criminal Forfeiture Authority and Procedure

8. Title 18, United States Code, Section 982(a)(1) provides that any person convicted of a violation of 18 U.S.C. § 1956 or 18 U.S.C. § 1957 (*i.e.*, money laundering) shall "forfeit to the United States any property, real or personal, *involved in* such offense, or any property traceable to such property" (emphasis added). Thus, as described below, all property involved in money laundering violations are forfeitable pursuant to 18 U.S.C. § 982(a)(1).

9. Additionally, Title 28, United States Code, Section 2461(c) provides that any person who is "charged in a criminal case with a violation of an Act of Congress for which the civil or criminal forfeiture of property is authorized" shall be ordered to forfeit such property as part of his sentence upon conviction. Thus, any person who is convicted of a violation of 18 U.S.C. § 666 (relating to theft concerning programs receiving Federal funds) and section 1343 (relating

3

to wire fraud) shall be ordered to forfeit the proceeds of those offenses as provided in 18 U.S.C. § 981(a)(1)(C), which is a civil forfeiture authority described below.

10. The procedures set forth in 21 U.S.C. § 853 govern criminal forfeiture of assets under Section 982. *See* 18 U.S.C. § 982(b).

11. Under 21 U.S.C. § 853(f), the Government may request the issuance of a warrant authorizing the seizure of property subject to criminal forfeiture in the same manner as provided for a search warrant. The warrant may issue upon a finding of probable cause to believe that the property to be seized would be subject to forfeiture upon conviction and that a restraining order under 21 U.S.C. § 853(e) may not be sufficient to assure the availability of the property for forfeiture.

12. Under 21 U.S.C. § 853(*l*), the district courts of the United States "shall have jurisdiction to enter orders as provided in this section," including issuing seizure warrants, "without regard to the location of any property which may be subject to forfeiture." Accordingly, courts may authorize the seizure of forfeitable property regardless of the property's location, including if the property is located outside the court's judicial district.

### Civil Forfeiture Authority and Procedure

13. Title 18, United States Code, Section 981(a)(1)(C) provides that "any property, real or personal, which constitutes or is derived from proceeds traceable to . . . any offense constituting 'specified unlawful activity' (as defined in section 1956(c)(7) of this title" is forfeitable to the United States. Section 1956(c)(7) sets forth what offenses constitute "specified unlawful activity," which includes, among other things, violations of section 666 (relating to theft concerning programs receiving Federal funds) and section 1343 (relating to wire fraud). Accordingly, the

4

proceeds of violations of 18 U.S.C. § 666 and 18 U.S.C. § 1343, as set forth above, are civilly forfeitable.

14. Title 18, United States Code, Section 981(a)(1)(A) provides that "[a]ny property, real or personal, involved in a transaction or attempted transaction in violation of section 1956 [or] 1957 ... of [Title 18], or any property traceable to such property" is forfeitable to the United States. Accordingly, property involved in money laundering violations, as set forth above, are civilly forfeitable.

15. The provisions of 18 U.S.C. § 981(b) govern the seizure of civilly forfeitable property. Under 18 U.S.C. § 981(b), the Government may apply for and obtain a civil forfeiture seizure warrant in the same manner as provided for a search warrant, *id.* § 981(b)(2); however, "[n]otwithstanding the provisions of rule 41(a) of the Federal Rules of Criminal Procedure, a seizure warrant may be issued pursuant to this subsection by a judicial officer *in any district* in which a forfeiture action against the property may be filed under section 1355(b) of title 28, and may be executed in *any district in which the property is found* . . . ." 18 U.S.C. § 982(b)(3). Because a civil forfeiture action may be brought in any district in which any of the acts or omissions giving rise to the forfeiture occurred, 28 U.S.C. § 1355(b), including, in this case, as detailed below, the Eastern District of North Carolina, the court may issue a civil forfeiture seizure warrant to be executed on property in another judicial district.

16. The Government hereby seeks seizure warrants under both criminal and civil authorities.

### Background

17. Katherine Southall BIGELOW is the subject of an ongoing criminal investigation that involves the FBI and North Carolina State Bureau of Investigation (NC SBI).

5

18. BIGELOW was hired as the Finance Director in Vance County, North Carolina (NC) in 2019. During the hiring process, BIGELOW provided a resume indicating she held a Master of Science in Accounting from North Carolina State University (NCSU) and she was a CPA. BIGELOW was offered the position as the Vance County Finance Director in August 2019 and started thereafter.

19. BIGELOW documented her duties as the Vance County Finance Director, from August 2019 to present, in a resume provided by Bigelow to outside auditors, Thompson, Price, Scott, Adams and Co. (TPSA), in January 2024. BIGELOW's resume listed her responsibilities at Vance County to include: creation and implementation of the annual budget averaging $76 million; preparation and reconciliation of all audit requirements; overseeing the Finance Department and duties including payroll, accounts payable, accounts receivable, business license, benefit reconciliation, daily deposits, bank reconciliations, and verify all ACH incoming and outgoing transactions; insurance and retirement reconciliation and verification; preparation of monthly commissioner financial reports; grant submission, reconciliation, and administration; profit and loss and all claims.

20. In January 2024, the outside auditors, TPSA, requested BIGELOW provide information for their SKE (Skills, Knowledge, and Expertise) documentation, as BIGELOW was the person at Vance County who would oversee the audit and accept any non-attest services provided by TPSA, such as assistance with year-end entries and preparation of financials. TPSA asked for a resume, the state of CPA license, and continuing education credits from the most recent two years. TPSA's email interaction with BIGELOW was provided to Vance County.

21. On January 16, 2024, BIGELOW provided the resume referred to in paragraph 19 listing her current employment at Vance County as Finance Director and a CPA designation to

6

TPSA. TPSA then asked BIGELOW for the state in which she was licensed and a listing of her continuing education credits. BIGELOW responded to TPSA, "VA" and provided four classes as continuing education. TPSA then asked BIGELOW to provide a screenshot of the state license lookup, or a copy of her CPA certificate. Later that day, BIGELOW provided a purported screenshot of the Virginia (VA) state license lookup for her CPA, via email attachment. The attachment was a screenshot for Katherine Anne Bigelow, mailing address Bracey, VA, and CPA license number 42837.

22. TPSA conducted a review of the items provided by BIGELOW. Their initial review showed the CPA license number provided by BIGELOW, mailing address Bracey, VA, which was consistent with BIGELOW's resume address of 493 Beechwood Road, Bracey, VA 23919. However, when TPSA independently looked up Katherine Bigelow on both the VA Board of Accountancy[1] and CPA Verify Individual Report Results, the search resulted in one hit on Katherine Anne Bigelow, license number 42837, with a mailing address of Lakeland, Florida (FL). Katherine BIGELOW with a Bracey, VA, address was not found.

23. On or around January 30, 2024, TPSA alerted the Vance County Attorney Jonathan Care (Care) and County Manager Renee Perry (Perry) of their belief that BIGELOW was not in fact a licensed CPA in the state of VA and questioned the validity of her claim throughout her employment that BIGELOW was a licensed CPA.

24. Thereafter, County Manager Perry consulted the Virginia Board of Accountancy (VBA) records and was informed that the true holder of license number 42837, which is further

---

[1] On March 1, 2024, I searched Katherine Bigelow through sites, the VA Board of Accountancy at https://cpaportal.boa.virginia.gov/verification and CPA Verify Individual Report Results at https://app.cpa.verify.org/search , and confirmed the finding by the auditors TPSA. The results provided Katherine Anne Bigelow, License number 42837, had the mailing address of Lakeland, FL. No Katherine S. Bigelow or Katherine Bigelow with a Bracey, VA mailing address was found.

7

listed as inactive, has never had an address of Bracey, VA. Instead, the license holder has a listed address of Lakeland, FL. Perry later was advised by the VBA that the license holder had never lived in Bracey, VA. Perry used the National Student Clearinghouse, DegreeVerify tool to verify BIGELOW's education. Perry was able to confirm BIGELOW's bachelor's degree from the University of North Carolina Wilmington but was unable to confirm BIGELOW's Master's in Accounting from NCSU. Perry also reviewed the certificates in BIGELOW's office and did not see a CPA certificate or a diploma from NCSU.

25.    On or around February 5, 2024, Perry confronted BIGELOW with the discrepancies and asked her to provide a copy of her CPA certificate. BIGELOW admitted she was not in fact a licensed CPA and the registration she provided to TPSA was not legitimate. BIGELOW stated, "I have been a fraud my whole life." BIGELOW was then terminated for fraud or theft and falsification of records for personal profit, to grant special privileges, or to obtain employment per Vance County Personnel Policy, Article IX., Section 5, Detrimental Personal Conduct Defined.

26.    Following BIGELOW's termination, Perry hired Chuck Murray (Murray) as the Interim Finance Director (IFD) to assist Vance County until a new Finance Director could be hired and to assist TPSA with the completion of the audit.

### Criminal Investigation into Katherine BIGELOW

27.    In March 2024, FBI, Raleigh RA was contacted by the Vance County Sheriff's Office (VCSO) regarding the audit performed by IFD Murray, which appeared to show BIGELOW had misappropriated funds from Vance County during her time as Finance Director. The VCSO referred the matter to the FBI and NC SBI, who opened a joint investigation.

28.     In preparation to assist the auditors to complete the audit, Murray reviewed budgeted line items over their budgeted amount and found five unusual unauthorized transactions conducted by BIGELOW. To date, Murray located 11 transactions conducted by BIGELOW that were not authorized by Vance County. The 11 transactions were sent via ACH and wire transmissions to Country Living Rentals LLC[2] (CLR) at 1804 Holt Road, Apex, NC 27519. Murray determined CLR was not on the approved vendor list for the county and had not received any payments prior to the transactions noted.

29.     CLR was listed on the NC Secretary of State (SOS), business records search as formed December 7, 2001, NC SOSID number 06122383. The company was current in registration as of 2023. The Registered Agent was listed as Tracie Melissa Jenkins (T. Jenkins), company address 1800 Holt Road, Cary, NC 27519-5894. The Manager was listed as Nicole Jenkins Manning (Manning), address 1804 Holt Road, Cary, NC 27519. An open-source search using Google provided a Better Business Bureau (BBB) profile of CLR describing it as a real estate rentals company. The profile listed the address 1800 Holt Road, Cary, NC, with Manning listed as the manager. A further Google search listed CLR as a "state-of-the-art parking facility serving Cary, NC with affordable covered and uncovered parking spaces." "Our spaces are clean, secure, easily accessible, and fit for short or long-term needs."

30.     Social media searches were conducted by the FBI on BIGELOW, Jenkins, and Manning. Public Facebook and Instagram accounts were located for Manning by investigators. Manning's Facebook account (facebook.com/Nicole.manning.3) and Instagram account (Instagram.com/dymyte78) contained similar pictures of Manning, who was identified using her

---

[2] The wire transmissions were sent to both County Living Rentals and Country Living Rentals. This appears to be a typographical error when the wire information was inputted. All eleven wires were sent to the same Country Living Rentals LLC, account number 175568656 at First Horizon Bank.

9

NC Department of Motor Vehicles (DMV) photograph. Manning's Instagram account followed and was followed by BIGELOW's private Instagram account, Instagram.com/katieboo0720. The Instagram account was identified as BIGELOW's account by matching the profile picture to her NC DMV photographs and other photographs obtained of BIGELOW. I am also aware that BIGELOW's date of birth is July 20, 1979, from NC DMV records and other records reviewed.

31. The 11 wires/ACHs were sent out from the Vance County General Fund Consolidated Account at Truist Bank, Account number 0005117837485 (herein after Victim Account #7485) to CLR First Horizon Bank (FHB) account number 175568656 (herein after CLR FHB #1 Account #8656). The transactions occurred between June 2021 and December 2023, totaling $1,399,589.48. The transactions identified by Murray occurred on or around the dates listed below:

| Date | Amount |
| --- | --- |
| 6/23/2021 | $43,291.39 |
| 9/8/2021 | 26,250.95 |
| 12/14/2021 | 79,899.16 |
| 2/14/2022 | 32,958.24 |
| 5/26/2022 | 65,624.53 |
| 8/29/2022 | 79,899.16 |
| 3/14/2023 | 398,469.24 |
| 4/19/2023 | 134,413.71 |
| 6/29/2023 | 202,118.17 |
| 9/8/2023 | 202,251.22 |
| 12/19/2023 | 134,413.71 |

10

| Total | $1,399,589.48 |
|-------|---------------|

32.     In researching the transactions and obtaining information from Truist Bank, Murray and Perry discovered BIGELOW had circumvented a key control within Vance County's banking operations at Truist Bank allowing BIGELOW to have sole approval of wire transfers and ACHs transfers out of the County's main operation account, Victim Account #7485.

33.     Through interviews of Murray, Perry, and others, it was determined that at the time of BIGELOW's hiring, an experienced Assistant Finance Director[3] worked with BIGELOW. BIGELOW and the Assistant Finance Director had dual approval on wires and ACHs sent from the Victim Account #7485. On or around June 21, 2021, the Assistant Finance Director resigned for another position and left her employment at Vance County. When the Assistant Finance Director left Vance County, BIGELOW became the sole approver on wire and ACH transactions for Victim Account #7485. Further, once a new Assistant Finance Director was hired, BIGELOW did not add them to the create a dual approval going forward. Therefore, once the former Assistant Finance Director left Vance County, BIGELOW became, and maintained, sole authority for approval of wire transfers and ACHs transfers out of the County's main operation account, Victim Account #7485, until her termination in February 2024.

34.     Review of the Vance County accounting system by Murray and others showed BIGELOW entered the transactions into the accounting system using her login, shown as KBIGELOW in the system. BIGELOW was in charge of the accounting system, maintaining and

---

[3] The former Assistant Finance Director has not yet been interviewed as the investigation is currently covert and interviews outside of Vance County employees may cause it to go public before seizure of accounts and interviews of BIGELOW and others.

11

assigning user names and user access rights to the system. The accounting journal entries related to the 11 transactions list KBIGELOW as the creator of the entry. Murray's review of the physical journal entry back up files located one transaction with backup documentation. The transaction dated December 14, 2021, a wire for $79,899.16 to CLR, had a piece of paper in what appeared to be BIGELOW's handwriting. The paper included wiring instructions for the CLR account used in the fraud. The note listed the following:

"ABA:084000026
Acct:175568656
$79,899.16
Inv #234062"

The ABA number 084000026 was confirmed as belonging to FHB and the account number was the one used to accept the fraudulent wires, CLR FHB #1 Account #8656.

35.    To hide the fraudulent transactions, BIGELOW expensed the funds to different Vance County expense accounts including COVID-19 ALL OTHER, ARPA EXPENSES, TECHNOLOGY AND OTHER SOFT COSTS, EQUIPMENT AND FURNISHINGS, MAINTENANCE BUILDINGS AND GROUNDS, and HEALTH CARE-DRUGS-MEDICINE. The COVID-19 ALL OTHER and ARPA[4] EXPENSES accounts were funded with Federal funding in excess of $10,000 during a one year period. BIGELOW further labeled the expenditures in an intentionally deceptive manner as shown below:

---

[4] ARPA refers to The American Rescue Plan Act (ARPA) of 2021, also called the COVID-19 Stimulus Package or American Rescue Plan providing state and local governments funds to make strategic investments in long lived assets, rebuild reserves to enhance financial stability, and or cover temporary shortfalls until economic conditions and operations could normalize during the COVID-19 pandemic.

12

| Date | Account | Expense Description |
|---|---|---|
| 6/23/2021 | COVID-19 ALL OTHER | COVID expense |
| 9/8/2021 | COVID-19 ALL OTHER | Final Payment |
| 12/14/2021 | TECHNOLOGY & OTHER SOFT COSTS | WIRE TO ESS FOR DS |
| 2/14/2022 | EQUIPMENT AND FURNISHINGS | ESS DRAFT |
| 5/26/2022 | MAINTENANCE BUILDINGS & GROUNDS | SENIOR CENTER |
| 8/29/2022 | ARPA EXPENSES | ARPA |
| 3/14/2023 | HEALTH CARE-DRUGS-MEDICINE | JAIL HEALTH BACK PAYMENT |
| 4/19/2023 | HEALTH CARE-DRUGS-MEDICINE | SITE #7162 OLD SHIP |
| 6/29/2023 | HEALTH CARE-DRUGS-MEDICINE | JAIL HEALTH |
| 9/8/2023 | HEALTH CARE-DRUGS-MEDICINE" | INMATES |
| 12/19/2023 | HEALTH CARE-DRUGS-MEDICINE | SITE 7162 |

36. Initial review of BIGELOW's emails, address kbigelow@vancecounty.org, by a Vance County employee found emails sent to BIGELOW related to some of the unauthorized transactions from Truist Bank. The emails located to date were sent December 14, 2021; February 14, 2022; August 29, 2022; and March 14, 2023; the same date as four of the unauthorized transactions. The emails were discovered in BIGELOW's "deleted items" folder. The emails were from Truist Bank, Subject "Wire Payment Confirmed Alert" to BIGELOW's Vance County email address kbigelow@vancecounty.org. I believe these emails show BIGELOW used her Vance County email address as the email address for CLR for these transactions.[5] One such email dated December 14, 2021, read:

"Dear COUNTRY LIVING RENTALS,

A payment was sent to you from VANCE COUNTY GENERAL FUND for 79,899.16 USD on Dec. 14, 2021.

If you have any questions or need further information contact KATHERINE BIGELOW at KBIGELOW@VANCECOUNTY.ORG or 2527382006.

---

[5] A Federal Grand Jury Subpoena has been sent to Truist Bank to verify. The response from Truist Bank and has not yet been received.

13

Thank you,

VANCE COUNTY GENERAL FUND"

## Bank Record Analysis

37. In April 2024, a FBI Forensic Accountant reviewed and analyzed the records relating to CLR that were obtained via Grand Jury subpoena from First Horizon Bank (FHB), and records relating to BIGELOW obtained via Grand Jury subpoena from Benchmark Community Bank (BCB). Other related records and Grand Jury subpoena responses were reviewed and analyzed by myself, and others involved with the investigation.

### First Horizon Bank Accounts – Country Living Rentals LLC.
### (CLR FHB #1 Account 8656 and Subject Account 1)

38. Manning, T. Jenkins, and Charles Stephen Jenkins (C. Jenkins) are the owners and signatories of CLR FHB Account number 175568656 (herein after CLR FHB #1 Account 8656), opened November 10, 2015. From June 2021 through December 2023, 11 wire or ACH transactions were received from Vance County via Victim Account #7485 totaling $1,399,589.48. Of that amount, approximately $1,394,734.48 was transferred to CLR FHB #2 Account number 175566059 (hereinafter **Subject Account 1**), approximately $55.00 was paid in fees to FHB, and the remaining approximately $4,800 was transferred to an unknown account. Manning, T. Jenkins, and C. Jenkins[6] are the owners and signatories of **Subject Account 1**, opened October 25, 2013. 14 of the transfers between CLR FHB #1 Account 8656 and **Subject Account 1** involved illicit funds in excess of $10,000.00.

---

[6] C. Jenkins was removed from the account on 02/08/2023 per subpoena returns received to date. A follow up is being sent to verify he was also taken off Account #1.

14

39. Of the $1,394,734.48 of illicit funds transferred from CLR FHB #1 Account 8656 to **Subject Account 1**, $277,878.43 was transferred to JB Farms Acct# 5810; $662,312.89 was transferred to **Subject Account 2**; and $100,343.16 to Outten & Whitby PC, on behalf of Bigelow. This makes the total amount of illicit funds transferred to BIGELOW, or accounts related to BIGELOW, approximately $1,040,534.48. Therefore, approximately $359,066 of the fraudulently obtained funds in **Subject Account 1** either remains in the account or was otherwise dissipated.

### Benchmark Community Bank – Jeremy Bigelow DBA JB Farms

40. BIGELOW and Jeremy Bigelow were the joint owners and signatories of an account in the name of Jeremy W. Bigelow DBA JB Farms, BCB account number 140015810 (herein JB Farms Account #5810), opened on March 1, 2021 and closed January 27, 2023. Per BCB records (which included a copy of a divorce decree) Jeremy Bigelow and BIGELOW closed all their joint accounts in January 2023 and officially divorced in August 2023. Between June 2021 and August 2022, JB Farms Account #5810 received transfers of illicit funds totaling approximately $277,878.43 from **Subject Account 1**. These transfers amounted to 71 percent of the total deposits during the life of the account into JB Farms Account #5810. Analysis to date of JB Farms Account #5810[7], showed of the approximate $277,878.43 of illicit funds received, approximately $46,827.66 was spent to purchase a 2023 GMC Yukon in the name of BIGELOW. The remaining amount was spent on personal expenses, home construction costs, farm expenses and personal loans before the account was depleted and closured on January 27, 2023.

### Benchmark Community Bank – Beginning Broadnax Consulting Account #1400025014 (Subject Account 2)

---

[7] Further investigation and tracing is being conducted on possible assets purchased from this account.

15

41. BIGELOW is the sole owner and signatory of Beginning Broadnax Consulting Co. (BB Consulting), BCB account number 1400025014 (herein **Subject Account 2**). BIGELOW opened the account on March 16, 2023. Corporation Documents provided to BCB show BB Consulting was formed on March 14, 2023, the same day a wire was sent by BIGELOW from Victim Account #7485 to CLR FHB #1 Account #8656 totaling $398,469.24. Katherine S. BIGELOW was listed as the Registered Agent, Director, and sole employee, using her address of 493 Beechwood Road, Bracey, VA 23919, and her Vance County email address, kbigelow@vancecounty.org. Prior to the opening of **Subject Account 2** in March 2023, BIGELOW had not conducted a fraudulent transfer from Victim Account #7485 since August 19, 2022, prior to her divorce. BIGELOW also stopped using her joint accounts with Jeremy Bigelow during this timeframe and opened her own accounts (**Subject Account 3 and 4**) in November and December 2022. This was followed by the establishment of BB Consulting, and the opening of **Subject Account 2**, at which point BIGELOW resumed making fraudulent payments from Victim Account #7485.

42. Between March 2023 and December 2023, **Subject Account 2** received wires and checks of illicit funds from **Subject Account 1** totaling approximately $662,312.89. An analysis of FHB bank records shows a sufficient amount of criminally derived proceeds in the account to fund these transfers.

43. From March 16, 2023 through March 31, 2024, **Subject Account 2** was funded with deposits totaling $700,312.89. Of the total deposits, $662,312.89, or 95 percent, was illicit funds stolen from Vance County and laundered through CLR Accounts at FHB. The remaining 5 percent included 9 deposits totaling $38,000 received from The Country Stor-House, a business

16

which appears to be an associated business, assumed name, or alter ego of CLR.[8] Agents and a forensic accountant are conducting further financial investigation to determine whether this $38,000 may also be directly or indirectly traceable to the illicit funds sent from Victim Account #7485 to CLR.

44.     Using the FIFO method,[9] at least $25,000 of illicit funds were traced from **Subject Account 2** into **Subject Account 3**; at least $4,000 of illicit funds were traced from **Subject Account 2** into **Subject Account 4**; at least $34,495 of illicit funds were traced into the purchase of a 2024 Honda Accord SD; at least $69,528.92 of illicit funds were traced into the purchase of a 2024 Jeep Wrangler (VIN#: 1C4RJXFG6RW151534) (hereinafter **Subject Asset 5**); and at least $54,716 of illicit funds were traced into the purchase of a 2023 Starcraft SLS-3QDH Pontoon, vessel registration number VA9183CK, hull number STR83169A323, Serial Number STR83169A323, with a 2024 Loadrite dual axle trailer, Vehicle Identification Number (VIN) 5A4DBFV20R2018625 (hereinafter **Subject Asset 7**). This leaves a net balance of illicit funds of at least $474,572.97 in **Subject Account 2** that either remains in the account or were otherwise dissipated.

### Benchmark Community Bank – Katherine Bigelow Account #1490000535 (Subject Account 3)

45.     BIGELOW is the sole owner and signatory of the account in the name of Katherine BIGELOW, BCB account number 1490000535 (herein **Subject Account 3**). BIGELOW opened

---

[8] A Google search showed The Country Stor-House as having two different websites; one listing it and CLR at the same address and phone number, the other using an address located adjacent to CLR's listed address. From surveillance of the properties, I am aware there is no boundary between the two addresses, and they appear to be the same business. The websites located were: https://www.countrystorhouse.com, address listed as 1804 Holt Road,Cary, NC, and https://country-storhouse.com, address listed as 6751 Charlie's Way, Cary, NC. Searches for The Country Stor-House on NC Secretary of State provided no results.

[9] The FIFO method is defined as first in first out. The first money deposited into the account is tracked as the first money spent.

17

the account on November 22, 2022. Using the FIFO method, between March 16, 2023 and March 31, 2024, at least $25,000 of illicit funds was transferred from **Subject Account 2** to **Subject Account 3**.

### Benchmark Community Bank – Katherine Bigelow Account # 1400023472 (Subject Account 4)

46.     BIGELOW is the sole owner and signatory of the account in the name of Katherine BIGELOW, BCB account number 1400023472 (herein **Subject Account 4**). BIGELOW opened the account on December 8, 2022. Using the FIFO method, between March 16, 2023 and March 31, 2024, at least $4,000 of illicit funds was transferred to **Subject Account 4** from **Subject Account 2**.

47.     Also deposited into the account since BIGELOW's termination in February 2024 were sale/trade in proceeds of $44,000 of vehicles purchased with illicit funds as set forth above. At the end of February 2024, BIGELOW sold the 2024 Honda Accord SD, purchased with illicit funds from **Subject Account 2**, to a licensed dealer. BIGELOW received a check for $24,000 which she deposited into **Subject Account 4**. Around the same time, BIGELOW traded in the 2023 GMC Yukon, purchased with illicit funds from JB Farms Account #5810, to the same licensed dealer. BIGELOW purchased a new 2024 Honda Pilot MP-AWD Elite (VIN#: 5FNYG1H88RB035088) (hereinafter **Subject Asset 6**) and received a check for the excess value of the 2023 GMS Yukon in the amount of $20,000. The $20,000 check was also deposited into **Subject Account 4**. These two deposits, which are directly traceable to the sale of assets purchased with illicit funds, along with the $4,000 transferred from **Subject Account 2**, equal an approximate total of illicit funds deposited in **Subject Account 4** of $48,000.

18

48.    The following is a chart of the flow of illicit funds described above:



49.    FHB's (First Horizon Bank's) Headquarters are in Knoxville, Tennessee (TN) and their servers are also located in TN. BCB (Benchmark Community Bank) is Headquartered in Kenbridge, VA and has locations in both VA and NC. Truist Bank is Headquartered in Charlotte, NC. All illicit transactions occurred in the course of interstate commerce.

## PROBABLE CAUSE TO SEIZE PROPERTY

50.    The facts and circumstances presented in this affidavit establish probable cause to believe Katherine BIGELOW is in violation of one or more of the following statutes: (a) Wire Fraud in violation of 18 U.S.C. § 1343; (b) Theft concerning programs receiving Federal Funds in violation of 18 U.S.C. § 666; and (b) Money Laundering in violation of 18 U.S.C. § 1956 and § 1957.

19

51.    Based on the information summarized in this Affidavit, there is probable cause to believe that the Subject Funds are traceable proceeds of the foregoing offenses and/or were involved in the foregoing money laundering offenses and are therefore forfeitable to the United States pursuant to 18 U.S.C. §§ 982 and/or 981. With respect to the money-laundering offense specifically, the above-described transactions were repeatedly in excess of $10,000 and consisted of the proceeds of specified unlawful activity, and the repeated movement of funds through at least three bank accounts and BIGELOW's creation of a new company and account in the company's name, reflects that the transactions were designed to conceal or disguise the nature, location, source, ownership, or control of the proceeds of specified unlawful activity.

52.    I request that this Court seal, until further order of the Court, all papers submitted in support of this affidavit, including the applications and seizure warrants. I believe that sealing these documents is necessary because the items and information to be seized are relevant to an ongoing investigation into the criminal activity. Premature disclosure of the contents of this affidavit and related documents may have a significant and negative impact on the continuing investigation and eventual prosecution by among other things, causing the destruction, alteration, or fabrication of evidence; the dissipation of assets and criminal proceeds; or the flight or disappearance of witnesses and subjects.

53.    I respectfully submit that a restraining order pursuant to 21 U.S.C. 853(e) may not be sufficient to ensure the availability of the property for forfeiture as the Subject Funds consisting of money and funds in bank and financial accounts are fungible, easily hidden, and easily transferable at all hours of the day and night by electronic means, direct withdrawals, and by other means. Accordingly, I respectfully request that this Court authorize the Federal Bureau of Investigation to seize the above-referenced property.

20

Further your affiant sayeth naught.

Julia Hanish
Special Agent
FEDERAL BUREAU OF INVESTIGATION


Pursuant to Rule 4.1 of the Federal Rules of Criminal Procedure, the affiant appeared before me via reliable electronic means, was placed under oath, and attested to the contents of this written affidavit.
Dated: May 8, 2024

Robert T. Numbers, II
United States Magistrate Judge

21